UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-22670-CIV-SEITZ/O'SULLIVAN

OLD REPUBLIC NATIONAL TITLE INS. CO.,

   Plaintiff,
vs.

UNITED STATES OF AMERICA,

   Defendant.
_____/

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

  THIS MATTER is before the Court following a bench trial held on December 21, 2009. This is an action for wrongful levy of taxes pursuant to 26 U.S.C. § 7426 in which Plaintiff, Old Republic National Title Insurance Company ("Old Republic") claims that the Internal Revenue Service ("IRS") levied the accounts of Old Republic's title insurance agent, Citizens Title Services, Inc. ("Citizens Title") and that the accounts held funds belonging to Old Republic. These funds include (1) $115,055.27 in premiums on Old Republic policies that Citizens collected, but never passed on to Old Republic, and (2) $18,7701.01 owed to third parties under Old Republic policies to which Old Republic claims it is entitled pursuant to a subrogation of rights under Old Republic's policies. The Court will enter a judgment in favor of Old Republic in the amount of $46,779.06 for premiums that Old Republic has proven the IRS collected through levies that Old Republic challenged in a timely manner. The Court will not award funds that cannot be traced to a specific account because Old Republic cannot prove such funds were seized pursuant to a levy that Old Republic challenged in a timely fashion.

# FINDINGS OF FACT

### A. Relationship Between Old Republic and Citizens Title

1. Old Republic is a title insurance company in the United States.[1] (DE-24, Joint Pretrial Stipulation ("Pretrial Stip.") at ¶5B). The state of Florida is among the markets where Old Republic writes title insurance policies. (*Id.*). Should a title defect, such as the closing agents' failure to pay a pre-existing lien or assessment at closing, be discovered after a real estate transaction has closed, then Old Republic's title insurance resolves the defect, usually through the payment of the assessment or lien post-closing. (*Id.*). Old Republic utilizes title insurance agents to issue its title insurance. (Pretrial Stip at ¶5D).

2. Citizens Title, a Florida corporation, operated by Joseph Andy, was one of Old Republic's title insurance agents operating out of South Florida. (Pretrial Stip at ¶5E). Citizens Title wrote title insurance for Old Republic, and acted as Old Republic's closing and escrow agent on the real estate transactions for which Citizens Title wrote title insurance policies. (Joint Pretrial Stip. at ¶5A).

### B. Collection And Forwarding Of Premiums

3. As Old Republic's title insurance agent, one of Citizens Title's responsibilities was to collect premiums on Old Republic's policies and transmit those premiums to Old Republic. Under its contract with its title insurance agents and pursuant to state law, Old Republic was to receive 30% of the amount that its agent collected in title premiums as Old Republic's fee for issuing title insurance and assuming liability on the event there was a claim

---

[1] Title insurance is a means by which purchasers and mortgage companies can insure against the loss from issues related to defective title, unresolved liens and encumbrances.

against the title. (DE-34, December 21, 2009 Bench Trial Transcript ("Transcript") at 49:23-50:21); Trial Exhibit 8, Old Republic Title Agent Agreement With Citizens Title ("Agreement") at page 3 (providing that Citizens is to "remit to [Old Republic] 30 percent of the title insurance rates ... as the underwriting fee for [Old Republic's] assumption of the risk").[2]

4.   The 30% fee is designated to Old Republic when a title commitment is issued to the insured. (Transcript at 51:1-4).[3] In a title commitment, Old Republic commits to insuring title upon the recording of the insured's secured instrument and Old Republic's review of documents reflecting matters that have to be recorded, such as an outstanding mortgage or taxes. (Transcript at 51:11-22). A title commitment is only issued after a title search of the subject real estate to determine that it can be insured. (Transcript at 51:9-11). After the title search is performed and the title commitment is shared with the lender, the buyers and their respective attorneys, the parties proceed to closing. (Transcript at 52:3-7).

5.   While Old Republic earns the 30% fee on commitment, that fee is only remitted to Old Republic after closing and the issuance of Old Republic's title insurance policy. (Transcript at 52:8-16). The policy can only be issued when Old Republic's agent updates the title by having recorded all of the instruments that are being insured in the policy. (Transcript at 52:16-20).

---

[2] While Old Republic was generally entitled to thirty percent of Citizens Title's title insurance fee, in cases where a title insurance policy had been written on a property within three years, the purchaser was entitled to a "reissue credit" from Citizens Title. In these cases, Old Republic was paid thirty percent of the premium left over after the reissue credit. (Transcript at 107:25-109:25).

[3] At trial, Old Republic's Vice-President and Operations Manager for South Florida, Julie Susik, provided the account of how Old Republic's fees are earned and transmitted. Susik manages a sales force that is responsible for signing title agents and attorneys, and has worked with Old Republic for 16 years. (Transcript at 33:20-34:23). She is familiar with Citizens Title because it was an agent within her area of responsibility and she oversaw Citizens Title by ensuring it complied with its agency contract, Florida statutes and administrative rules governing title insurers and their agents, and an assortment of other rules and regulations governing the industry. (Transcript at 37:19-14).

Only when the clerk returns a file stamped copy of the underlying instrument can a policy issue to the insured. (Transcript at 52:21-53:6). As a result, the closing statement generated in the transaction reflects that Old Republic has earned a fee, but the fee stays in an escrow account set up by Old Republic's agent until the policy is issued. (Transcript at 53:9-14). Old's Republic agent conducts the closing and the agent is responsible for receiving and disbursing the fee. (Transcript at 38:15-20). The agent is also responsible for issuing the policy, which typically occurs thirty to sixty days after a closing, though during times when the real estate market is especially active it might take an agent three to four months to issue the policy. (Transcript at 59:4-21). If Old Republic's agent goes out of business after a closing takes place, Old Republic is still obligated as of the time the transaction closes to issue a title policy. (Transcript at 179:17-180:1).

   6. Regardless of whether a written policy is issued to an insured, Old Republic has liability as soon as the title commitment is issued. Insured parties pay for coverage and receive that coverage when they are given a title commitment, even if a policy is not issued to them until later. (Transcript at 188:17-189:2). As a result, after sending a commitment, Old Republic will still have to satisfy a claim to the insured even if a written policy has not been issued to the insured. (Transcript at 188:6-16).

   7. After the policy is issued, the fee is usually transmitted to Old Republic in a check. (Transcript at 53:17-21). However, even if for some reason Old Republic's agent does not issue a policy after closing, the fee is still the property of Old Republic and not its agent or the insured party. (Transcript at 53:22-54:7). Pursuant to this arrangement, Old Republic's agent agreements provide that "[a]ll amounts due [Old Republic] pursuant to this agreement shall,

upon receipt by Agent, be considered the property of [Old Republic], and shall be held in trust by Agent for the benefit of [Old Republic] as trust funds." (Agreement at page 3).

8.  Moreover, Citizens Title was required under its agreement with Old Republic to keep Old Republic's fees in an escrow account. (Transcript at 27:21-28:1; Agreement at pages 2-3 (providing that the agent must hold Old Republic's funds in "a bank account separate and apart from Agent's personal and operating accounts")). Citizens Title was also required under the Agreement and Florida law to reconcile those escrow accounts monthly and submit the resulting bank reconciliation to Old Republic.[4] (Transcript at 45:6-14; Agreement at pages 2-3).

9.  Old Republic's internal audit department reviewed monthly reconciliations from Citizens Title and its other agents in part to ensure that the agents were maintaining the subject accounts as escrow accounts separate from the agent's operating account. (Transcript at 48:20-25). During this review, the department typically looked at whether the account in question was styled as an escrow account on the bank statement and observed whether or not funds that came into or left an account were tied to specific files. (Transcript at 49:1-6). While Old Republic also performed audits of these reconciliations, it did not examine line items that were of a relatively low dollar value. (Transcript 101:1-14; 185:24-186:18). During its relationship with Old Republic, Citizens Title complied with its obligation to submit bank reconciliations on a monthly basis. (Transcript at 45:19-25).

---

[4] A bank reconciliation is a listing of each transaction that has taken place in a given period of time in order to explain any discrepancies between the bank's balance for an account and the balance shown in the account-holder's records. (Testimony at 47:24-48:6). For example, if Citizens Title issued Old Republic a check from an escrow account and Old Republic had not yet presented that check, the reconciliation should indicate that the check had been issued and explain why the bank's balance reflected a credit on the account that would not be reflected in Old Republic's balance.

5

### C.  Citizens Title's Tax Liabilities

10. Unfortunately, however, Citizens Title was not compliant with federal law requiring it to pay employment and unemployment taxes to the IRS. Between 1999 and 2005, Citizens Title incurred a substantial tax debt to the United States. Specifically, Citizens Title failed to pay all of its employment taxes for the taxable quarters ending on the following dates: September 30, 1999, December 31, 1999, September 30, 2000, December 31, 2000, March 31, 2001, June 30, 2001, September 30, 2001, December 31, 2001, March 31, 2002, June 30, 2002, September 30, 2002, December 31, 2002, March 31, 2003, June 30, 2003, September 30, 2003, December 31, 2003, March 31, 2004, June 30, 2004, September 30, 2004, December 31, 2004, June 30, 2005, September 30, 2005, and December 31, 2005. (*See* Trial Exhibit 1).

11. In addition to its employment taxes, Citizens Title failed to pay its unemployment taxes for the 2001, 2003, 2004 and 2005 tax years. (*Id.*).

12. Lastly, Citizens Title owed the United States a civil penalty assessed against it for the tax period ending on December 31, 1999 for intentional disregard of its tax obligations. (*Id.*).

### D.  Tax Levies

13. As a result, the IRS filed notices of federal tax lien on account of those liabilities with the Florida Secretary of State. The notices were filed on August 4, 2006, February 22, 2007 and August 1, 2007. (*See* Trial Exhibit 2).

14. Prior to filing its notices of federal tax lien, the IRS issued to Citizens Title notices of intent to levy in an effort to collect the company's delinquent taxes. Those notices were issued to Citizens Title on July 14, 2006, January 31, 2007, and July 18, 2007. (*See* Trial Exhibit 1).

15. Pursuant to 26 U.S.C. § 6331, the IRS issued notices of levy and levied bank accounts held by Citizens Title at Colonial Bank on the following dates and in the following amounts.

| Levy Notice Date | Levy Date | Account Levied | Amount Levied From Account | Total Amount Levied |
|---|---|---|---|---|
| 06/18/2007 | 07/12/2007 | 3324 | $ 26,385.80 | $279,385.80 |
| | | 4207 | $250,000.00 | |
| 07/18/2007 | 08/10/2007 | 3324 | $ 13,955.08 | $392,416.30 |
| | | 4215 | $     100.98 | |
| | | 4614 | $300,719.01 | |
| | | 5238 | $ 29,290.24 | |
| | | 5475 | $ 35,163.17 | |
| | | 5599 | $ 13,187.82 | |
| 09/17/2007 | 10/09/2007 | 3324 | $     307.05 | $ 32,873.21 |
| | | 4614 | $ 32,566.16 | |
| 11/29/2007 | 12/26/2007 | 3324 | $     332.49 | $     332.49 |

(*See* Trial Exhibits 3-7).

16. Some of the accounts levied were labeled "escrow accounts" -- indicating that, at least nominally, those accounts were used by Citizens Title for the closing of real estate loans and the disbursement of real estate closing proceeds as required by Florida law. (Pretrial Stip. at ¶5Q). The accounts contained funds related to real estate closings in which Citizens title acted as a title agent. (Pretrial Stip. at ¶5R).

E. **Citizen Title's Management Of The Levied Accounts**

17. However, the IRS does not levy escrow accounts and the Revenue Officer

Advisor who handled the levy testified that the IRS would not have levied the accounts if they were "legitimate escrow accounts." (Transcript at 238:21-24; 246:12-16). The IRS only accepted the levied funds because, after Colonial Bank received the notices of levy described above, Colonial Bank informed the IRS that it had investigated the levied Citizens Title accounts and determined that they were only "regular checking accounts," despite being labeled in some instances as "escrow" accounts. (Transcript at 247:15-248:4).

18.    Old Republic claims that the levied accounts actually included accounts that were properly maintained as escrow accounts. Julie Susik, Old Republic's Operations Manager for South Florida, testified at trial that the audit department she supervises contacts her if it suspects that an agent's account is not being used as an escrow account and the audit department never contacted her about any "serious issue" regarding a Citizens Title account. (Transcript 125:23-126:22).

19.    However, the Government collected account signature cards from Colonial Bank that identified each of the levied accounts as interest-bearing business checking accounts, not as escrow accounts. (Trial Exhibit 11). While checks drawn on accounts 6911, 3324, and 5475 designate those accounts as "escrow accounts," the corresponding signature cards in the record do not indicate that they are escrow accounts. In the signature cards for the levied accounts where the account holder designates the business purpose of the account, in almost every instance, Citizens Title selected "corporate checking account" instead of writing in that the accounts were escrow accounts. (*Id.*; Transcript at 224:18-225:7).[5] Colonial Bank did not

---

[5] However, the signature form for account 5599 designated the account, in the owner and address section, as an "escrow account." (Trial Exhibit 11).

8

produce to the Government the original account signature cards that would have opened these accounts because the Bank misplaced those records. (Transcript at 236:10-237:21, 241:16-21).

20.  The record indicates that Citizens Title made payments to itself out of some of the levied accounts for settlements and closing fees, and other costs incurred in connections with real estate closings.[6] (*See, e.g.,* Trial Exhibit 13 at 000855 (check drawn on account 5238 in the amount of $239.08 payable to Citizens Title for closing fee, endorsements and title insurance); Trial Exhibit 22 at 001463-66 (check drawn on account 3324 in the amount of $47,662.83 payable to Citizens Title for proceeds on a second mortgage). However, the Government found no evidence indicating that Citizens Title or Joseph Andy was using account 5599, the only account denoted as an escrow account in a signature card, as an operating account or for personal purposes. (Transcript at 242:14-243:5).

### F. Old Republic's Claim

21.  On April 8, 2008, Old Republic filed an administrative claim with the IRS pursuant to 26 U.S.C. § 6343(b) seeking the return of funds the IRS levied from Citizens Title's bank accounts on August 10, 2007, October 9, 2007 and December 26, 2007.[7] (Trial Exhibit 9).

22.  On July 2, 2008, the IRS disallowed plaintiff's administrative claim. Specifically, the IRS determined that Old Republic failed to establish that the levied funds did not belong to Citizens Title or that Old Republic had an interest in the funds that was superior to that of the

---

[6] The Parties do not appear to dispute that account 4215 was an operating account as checks drawn on that account describe it as an "operating account" and the record contains checks showing that Old Republic used that account to pay for rent, electricity, coffee service, and other expenses. (Trial Exhibit 23). Checks drawn on account 6269 designate it as a "sweep account." (Trial Exhibit 13).

[7] Plaintiff also sought the return of funds levied from Citizens Titles' bank accounts on July 12, 2007 pursuant to a June 18, 2007 notice of levy, but no longer challenges that levy because it did not file a wrongful levy with the IRS within nine month statute of limitations period beginning on the date of the levy. 26 U.S.C. § 6532(c).

United States. (Pretrial Stip. at ¶5X).

23. Old Republic then filed suit on September 25, 2008, within the six month deadline for filing suit following the disallowance of an administrative claim for wrongful levy. 26 U.S.C. § 6532(a).

    **a.**     **Premiums**

24. At trial, Old Republic claimed that at the time of the levies, it had a direct ownership interest in $115,055.27 of the levied funds consisting of insurance premiums that Citizens Title owed Old Republic for real estate closings in which Citizens Title served as title agent. Old Republic separates these premiums into three categories:

    a.     $32,184.44 in premiums due Old Republic from Citizens Title residing in accounts 5238 and 5475 based on original checks or copies of checks payable to Old Republic that Old Republic obtained after the IRS' levies. Old Republic claims these checks were never transmitted and cashed because of the levies. (Trial Exhibit 12, line entries 9 through 90).

    b.     $14,594.62 constituting premiums due Old Republic from Citizens Title residing in account 3324 where Old Republic obtained original checks or copies of checks payable to Old Republic after the IRS' levy. Old Republic claims these checks were never transmitted and cashed because of the levies. (Trial Exhibit 21; Transcript at 89:7-17).[8]

---

[8] While Old Republic submitted an exhibit at trial claiming that it was entitled to $25,147.61 in premiums residing in account 3324 (Trial Exhibit 21), it now concedes that its claim for moneys removed from that account is limited to $14,594.62. The Government levied a total of $40,982.42 from account 3324, but $26,385.80 of that amount was levied pursuant to a July 12, 2007 levy that Old Republic did not challenge in a timely manner.

  c. $68,276.21 constituting premiums due Old Republic from Citizens Title for policies issued but for which closing files and checks could not be located by Old Republic. (Trial Exhibit 12, line entries 91 through 323).

25. Old Republic is claiming premiums on approximately 400 policies that constitute a minute fraction of the premiums Citizens Title was obligated to pass on to Old Republic from 1998 to 2006. (*See* Trial Exhibit 19 (agent policy log listing at least 16,000 policies reported during this time period); Transcript at 63:2-65:6)). Old Republic learned about the outstanding premiums after Citizens Title gave notice that it was winding down its business. (Transcript at 69:19-70:14). When Citizens Title's President, Joseph Andy, informed Old Republic that the Government had levied Citizens Title's escrow accounts, Old Republic requested bank information to determine the amount of premiums still residing in the escrow accounts, and policy files to meet the requests of banks and other third parties who were beginning to ask for policies that were never issued after a closing. (Transcript at 73:1-20). Old Republic did not receive a file for every claim it thought was due. However, for the files it did receive, it decided whether a premium was owed or a policy needed to be issued. (Transcript at 74:2-18).

26. For each premium that Old Republic is claiming, it has a corresponding record showing that a premium is owed in the form of either (1) an actual check that Citizens Title cut for Old Republic (but never sent to Old Republic prior to the levies) following a closing; or (2) documents related to specific closings indicating that a closing occurred but no policy was issued (and no premium paid); or (3) support in its own internal reporting system identifying policies that were issued without a corresponding premium payment. (Transcript at 75:20-76:5). When an insured informed Old Republic that it had never received a policy, Old Republic

11

independently confirmed that a closing had taken place, the appropriate documents were recorded, and Old Republic was responsible for issuing the policy that Citizens Title failed to issue before wrapping up. (Transcript at 90:12-91:7).

### b. Third Party Claims

27. Old Republic also claims that it is entitled to recover $18,770.01 in funds that were in the levied accounts and earmarked for the payment of various liens in order to insure clear title for three insured parties. Because of the levies, Old Republic had to step forward and pay claims to these parties (Shull, Duffie and Valdes) in order to secure clear title to property purchased in transactions for which Citizens Title served as closing agent. (Trial Exhibit 16; Transcript at 162:17-168:10).

28. Old Republic asserts that it is the owner of these three third-party claims by virtue of subrogation. In the event Old Republic resolves a title claim, Old Republic's title insurance policies require full subrogation of any claims paid by Old Republic. (Trial Exhibit 16, pt. A, at 8; Transcript at 165:4-22).

29. Plaintiff paid each of these third parties on the following dates and in the following amounts:

| Third-Party Claimant | Date Old Republic Paid Each Claimant | Amount Paid |
| --- | --- | --- |
| Shull | March 18, 2008 | $ 6,176.51 |
| Duffie | July 28, 2008 | $ 4,431.00 |
|  | December 5, 2008 | $    569.00 |
| Valdes | February 9, 2009 | $ 7,053.60 |
|  | TOTAL | $18,770.01 |

(Trial Exhibit 16).

30. There is no evidence to indicate which of Citizens Title's bank accounts held the funds Shull, Duffie and Valdes paid to Citizens Title. (Transcript at 200:14-201:23).

## CONCLUSIONS OF LAW

31. To recover funds under 26 U.S.C. § 7426, a party must show that (1) it has an interest in the funds; and (2) that the levy was wrongful. *See, e.g., Morris v. United States*, 813 F.2d 343, 345 (11th Cir. 1987).

32. Under § 7426, the plaintiff bears the initial burden of establishing that it holds title or some other ownership interest in the funds levied by the IRS. *See, e.g., Morris*, 813 F.2d at 345. If such a showing is made, the burden then shifts to the United States to establish a nexus between the taxpayer and the levied funds. *Id.* However, at all times, the plaintiff retains the ultimate burden of proof that the levy is wrongful and should be overturned. *Id.* To prove that the levy is wrongful and should be overturned, the plaintiff must convince the Court that all or a portion of the levied funds actually belong to it and not the taxpayer against whom the levy is made. *Id.*, at 348-49.

33. "In the application of the federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *Aquilino v. United States*, 363 U.S. 509, 513 (1960). Federal statutes create no property rights but merely attach federally-defined consequences to rights created under state law. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985). The Court will address separately Old Republic's claims for unpaid premiums and for third-party claims.

1. **Premiums**

    A. **Propriety Of Levies On Accounts Containing Premiums**

    34.  The Parties agree that premiums on Old Republic policies resided in some of the levied accounts at the time those accounts were levied and that at least some of those premiums were Old Republic's property.[9] As a result, the Court will first address whether the Government had a right to levy funds in which Old Republic had a property interest. Old Republic first claims that any premiums taken out of the accounts were wrongfully seized because the accounts were maintained as escrow accounts that the Government should never have levied. However, Old Republic's only evidence supporting this fact is the testimony of its Operations Manager for South Florida that the audit team under her supervision never notified her that there was any indication the accounts were not being maintained as escrow accounts. The Parties do not dispute that Colonial Bank did not consider the accounts to be escrow accounts and Old Republic has produced no evidence to indicate the accounts were properly designated as escrow accounts when Citizens Title opened them. As a result, while Old Republic argues that there is no evidence to indicate that Citizens commingled funds designated for Old Republic with its operating funds, that argument does not establish that Citizens Title opened the levied accounts as escrow accounts.

    35.  However, Old Republic still has a claim to some premiums superior to the Government's because Florida law provides that the premiums Citizens Title retained on Old Republic's behalf were "trust funds." Fla. Stat. § 626.8473(2) expressly provides as follows:

---

[9] The Government concedes that Old Republic can trace $1,447.04 residing in account 5475 to a policy that Old Republic issued to an insured and acknowledges that Old Republic has evidence, in the form of an original check in Citizens Title's files, that those funds were never forwarded to Old Republic.

"All funds received by a title insurance agent . . . shall be trust funds received in a fiduciary capacity by the title insurance agent and shall be the property of the person or persons entitled thereto." Furthermore, Fla. Stat. §626.8473(4) provides that such funds "shall not be subject to any debts of the title insurance agent."

36.     The Government is not entitled to levy funds that are being held by a taxpayer in trust for a third party. *See, e.g., Owen v. Drywall & Acoustical Supply Corp.*, 325 F. Supp. 397, 401 (S.D. Tex 1971) (levy cannot stand where funds in question held in trust for employees' vacation fund). Accordingly, to the extent that Old Republic can identify premiums within each of the levied accounts that were owed to Old Republic, but were never forwarded because of the levies, Old Republic is entitled to those premiums.

### B.     Premiums That Old Republic Can Identify In Levied Accounts

37.     Having found that Old Republic has a superior interest to the premiums in the accounts that were properly owed to Old Republic, the Court must determine the amount to award Old Republic based on the evidence presented at trial. The Court will address in turn the three categories of premiums described above.

#### 1)     Accounts 5238 and 5475

38.     First, Old Republic claims that it is entitled to $32,184.44 in premiums from accounts 5238 and 5475, based on original checks or copies of checks located in Citizens Title's files that Old Republic claims it never received and was never able to cash because of the IRS' levies. The Government raises two challenges to Old Republic's claim. First, it claims that Old Republic cannot use copies of checks as proof to show it was owed a premium on a policy because the backs of the checks are not visible and, the Government claims, it is not possible to

tell whether or not those checks were cashed. However, Julie Susik, who helped assemble the records presented at trial, testified that Old Republic has an account receivables system and other documents that it has used to identify the premiums that were owed. The Government has presented no evidence to rebut the veracity of Old Republic's calculations and the Court finds that Susik's testimony and photocopies of checks are reliable evidence to support Old Republic's calculations.

39.     Second, the Government claims that Old Republic is not entitled to premiums supported only by a check drawing on one of the levied accounts where neither Citizens Title nor Old Republic issued a policy to the insured party because Old Republic lacks proof to establish it was entitled to a premium. The problem with this argument is that the undisputed evidence at trial showed that Old Republic was owed its premium at the time that it issued its title commitment, not at the time it issued a written policy. While Old Republic was obligated to complete the administrative task of issuing a written policy after it had received payment and the transaction closed, it was required satisfy a claim even if a written policy had not been sent to the insured. Moreover, Julie Susik testified that a closing occurred on the files for which Old Republic claims it is owed a premium. (*See* Transcript 186:19-187:13). Accordingly, the undisputed evidence shows that the claimed premiums residing in the levied accounts were the property of Old Republic, and not that of either Citizens Title or a third party. The Court will award Old Republic $32,184.44 for unpaid premiums residing in accounts 5238 and 5475.

### 2)      Account 3324

40.     Next, Old Republic claims that it is entitled to $14,594.92 in premiums from account 3324, based similarly on original checks or copies of checks located in Citizens Title's

files.[10] While many of these premiums cannot be tied to an original check or an issued policy, the Court, for the reasons stated above, finds that Old Republic has established by a preponderance that it is entitled to the claimed amount of unpaid premiums. As a result, the Court will award Old Republic $14,594.92 for unpaid premiums residing in accounts 3324.

### 3) Premiums Not Tied To A Specific Account

41. Finally, Old Republic claims that it is entitled to $68,276.21 in unpaid premiums reflected in its receivables system and other records that denoted files where Old Republic had issued a policy though it had not yet received a premium. Old Republic was not able to locate original checks or photocopies of checks tying the unpaid premiums on these files to one of the levied accounts.

42. Under the facts before the Court, Old Republic's inability to trace the unpaid premium into an account is critical because Old Republic is barred by the applicable statute of limitations from claiming premiums taken from some of the levied accounts. Specifically, Citizens Title used accounts 3324 and 4207 to hold premiums for Old Republic, but, as Old Republic concedes, it cannot reclaim any premiums held in account 4207 and can only claim $14,594.92 for premiums held in account 3324. These accounts were levied in July 2007, but Old Republic did not file an administrative claim within nine months of the levy, barring Old Republic from claiming any property taken at that time. Moreover, the amount of funds seized from these accounts pursuant to the July levy was substantial – $250,000.00 from account 4207 and $26,385.80 from account 3324.

---

[10] Old Republic actually has presented evidence that at Citizens Title held more than $15,000 in unpaid premiums in the levied accounts, but concedes that it can only claim amounts seized in the August 2007, October 2007 and December 2007 levies, which amounts to $14,594.92.

43.     Had Old Republic been more thorough in its audits and had it managed its agents more closely, it very well may have been able to detect these missing premiums well before the IRS levied the accounts in question. In fact, the evidence produced at trial indicated that some of these premiums were owed for over five years. (*See* Transcript at 101:1-16). Accordingly, it is appropriate in this case that Old Republic not be able to recover funds that it could have requested from Citizens Title months or years before the levies and that it cannot trace into one of the levied accounts.

44.     Given Old Republic's inability to trace these policy-only funds into one of the levied accounts, Old Republic cannot show, for any amount itemized in this category of premiums, that it is more likely than not that the amount was seized pursuant to a levy that Old Republic can challenge. As a result, the Court will not grant Old Republic an award for such premiums. Accordingly, Old Republic is left with the Court's total award for unpaid premiums traceable to accounts 5238, 5475 and 3324, which amounts to $46,779.06.

2.     **Third-Party Claims**

45.     Old Republic's claim under a subrogation of rights to funds initially belonging to third parties can be dispensed with quickly because those funds have also not been traced into any of the levied accounts. It is impossible for the Court to know whether the funds earmarked for Shull, Duffie and Valdes resided in accounts 4207 and 3324, or in some other account.[11] As a

---

[11] Even if Old Republic could identify the accounts in which the funds resided and its argument that it had a superior interest to these third-party claims had merit, its award would be reduced because it had no interest in the Valdes claim at the time it filed suit. Old Republic filed suit on September 25, 2008, but had only paid the $6,176.51 Shull Claim and $4,431.00 of the Duffie claim. As a result, at the time it filed suit, it only had a property interest in those amounts and had no standing to recover for the Valdes claim or the remaining $569.00 on the Duffie claim. *See Allstate Ins. Co. v. Metro. Dade Cty.*, 436 So.2d 976, 978 (Fla. Dist. Ct. App. 1983) (right of subrogation vests only upon subrogee's payment to subrogor).

result, the Court cannot know whether or not Old Republic has made a timely claim for these third-party claims and will not grant Old Republic an award for such claims. Having carefully considered the Parties' written submissions, the evidence at trial and applicable authority, it is hereby

ORDERED THAT

(1) Plaintiff Old Republic is entitled to judgment against Defendant United States of America in the amount of $46,779.06.

(2) A final order of judgment shall be entered contemporaneously herewith.

(3) All pending motion are DENIED as moot and this case is CLOSED.

DONE and ORDERED in Miami, Florida this 27th day of April, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record